UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| M.K.J., a minor by way of her mother, Tiffany Jordan, <br>     *Plaintiff*, <br> <br> vs. <br> <br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br>     *Defendant*. | 1:11-cv-00873-JMS-TAB |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff M.K.J., a minor by way of her mother Tiffany Jordan, applied for disability insurance benefits ("DIB") and Supplemental Security Income Benefits ("SSI") child benefits through the Social Security Administration ("SSA") in May 2007. [R. 167-174.] After a series of administrative proceedings and appeals, including hearings in May 2009 and July 2010 before Administrative Law Judge ("ALJ") James Norris, the Commissioner finally denied the application. The Appeals Council denied Ms. Jordan's timely request for review of the ALJ's decision, rendering that decision the final one for the purposes of judicial review. 20 C.F.R. § 404.1481. Ms. Jordan then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the ALJ's denial.

#### BACKGROUND

**A. Pertinent Medical Evidence**

M.K.J. was born to Ms. Jordan in late August 2006. [R. 179; dkt. 14-5 at 2.] In June 2007, Ms. Jordan filed an application on behalf of M.K.J., alleging that M.K.J. was disabled from birth due to a cleft lip. [R. 179-81, 196; dkt. 14-5 at 2-4.] In October 2007, consulting physician Dr. Joseph Croffie examined M.K.J. and noted that her "chest was symmetrical. There

were no wheezes, crackles, or rhonci." [R. 320; dkt. 14-7 at 38.] He also noted that M.K.J. had a repaired cleft lip. He noted that less than marked limitations in the health and physical well-being, no limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for herself. Did not have a cleft palate but "a high arched palate." [*Id.*] He further opined that the repaired cleft lip "should not cause any problem" besides aesthetics. [*Id.*]

The next month, state agency physician Dr. Joseph Gaddy, reviewed the file and concluded that M.K.J. had less than marked limitations in the health and physical well-being domain, and no limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for herself. [R. 322-27; dkt. 14-7 at 40-45.]

In June 2008, state agency physician Dr. Steven Roush reviewed the file and concurred with Dr. Gaddy's assessment that M.K.J. had less than marked limitations in the health and physical well-being domain, and no limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for herself. [R. 330-35; dkt. 14-7 at 48-53.]

In January 2010, M.K.J. was treated for vomiting and a cough. [R. 361; dkt. 14-7 at 79.] Her x-rays showed no signs of pneumonia, but signs of possible viral bronchitis or reactive airway disease. [R. 360; dkt. 14-7 at 78.] She received treatment again later that month after being sick for two weeks with a fever, runny nose, and cough. [R. 363-64, dkt. 14-7 at 81-82.]

In February 2010, M.K.J. was diagnosed with "mild persistent asthma," and was prescribed an Albuterol inhaler and a five-day course of the steroid Prednisone. [R. 366; dkt. 14-7 at 84.] At an administrative hearing before the ALJ, Ms. Jordan later testified before the ALJ

2

that M.K.J. was brought to the emergency room twice during February 2010 and experienced wheezing and shortness of breath during the two-week period between visits. [R. 55-56; dkt. 14-2 at 57-58.]

In June 2010, consulting physician Dr. Emily Pearce examined M.K.J. and observed that while M.K.J. reportedly had experienced delays in speaking and walking, she "seem[ed] to have caught up by now and ... is speaking quite well for a 3-1/2-year old." [R. 371; dkt. 14-7 at 89.] Dr. Pearce also noted that her "physical development ha[d] also caught up." [*Id*.] Following examination of M.K.J., Dr. Pearce noted "good air entry bilaterally with clear breath sound. There are no retractions and no flaring." [R. 372; dkt. 14-7 at 90.]

The following month, consulting psychologist Michael O'Brien, Psy.D., evaluated M.K.J. (Tr. 375-80). He found that M.K.J. could "understand, remember and carry out simple instructions ...; focus and concentrate well enough to carry play with clothes and make up and watch cartoons ...; relate to others, on a superficial basis, and gets along well with others ...; [and had] "been able to overcome much more than a 'routine change' in her life (sexual abuse) and is doing remarkably well given the circumstances." [R. 379; dkt 14-7 at 97.]

At the May 2010 and June 2010 administrative hearings before the ALJ, medical expert Dr. Charles Block opined that M.K.J.'s impairments did not meet the listing for a cleft palate, asthma, or developmental delays. [R. 33-35, 48; dkt. 14-2 at 34-36, 49.] He also testified that, in his opinion, M.K.J. had less than marked limitations in the health and physical well-being domain, and no limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for herself. [R. 48-49; dkt. 14-2 at 49-50.]

### B. Ms. Jordan's Testimony

Ms. Jordan testified at the administrative hearings that both M.K.J. and her twin sister have had breathing problems since birth, and that she took M.K.J. to the emergency from twice in February 2010 for shortness of breath and wheezing. [R. 56-57; dkt. 14-2 at 57-58.] She also testified that during the two-week period between the visits, M.K.J. continued to have wheezing and shortness of breath. [*Id.*] Ms. Jordan testified that at the second visit, M.K.J. was prescribed the steroid Flovent, which she had been continuing to use as of the time of the hearing. [*Id.*] She further testified that she had to give both M.K.J. and her twin sister a steroid inhalant "every day, regardless of their asthma." [R. 39-40, 58; dkt. 14-2 at 40-41, 59.] She also stated that she had not been told to stop administering the inhalant. [R. 40; dkt. 14-2 at 41.]

## DISCUSSION

This Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's (and ultimately the Commissioner's) findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted). If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. Otherwise the Court must generally remand the matter back to the Social Security

Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

For a child to be considered disabled under the Social Security Act, ahe must show that she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(C)(i).

The Commissioner has established a three-step sequential evaluation process for determining disability for children:

Step One:  If a child is engaged in substantial gainful activity, she is not disabled, regardless of the medical findings. 20 C.F.R. § 416.924(b).

Step Two:  If a child's impairments are not severe, i.e. they do not significantly limit her ability to perform basic work activities, she is not disabled. 20 C.F.R. § 416.924(c).

Step Three:  If a child's impairments meet, medically equal, or functionally equal an impairment described in the children's Listings, she is disabled. 20 C.F.R. Pt. 404, Subpt. P, App 1.

If a child's impairment or combination of impairments does not meet or medically equal a Listing, the ALJ assesses the functional limitations caused by the child's impairment or combination of impairments to determine the functional equivalence. 20 C.F.R. § 416.926a(a).

There are six broad areas of functioning or "domains" used to determine functional equivalence: (1) acquiring using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. 416.926a(b)(1). Generally, a child shows functional equivalence to a Listing by establishing "marked limitations in two domains, or an "extreme" limitation n one domain. 20 C.F.R. § 416.926a(a). If a child does not have marked

5

limitations in two domains, or extreme limitations in one domain, he is not disabled. 20 C.F.R. § 416.92(d)(2)."

Ms. Jordan claims the ALJ committed various errors in finding that M.K.J. was not disabled. [Dkt. 21 at 17.] Specifically, Ms. Jordan claims the ALJ (1) erred in finding that M.K.J.'s impairments did not meet or medically equal a Listing; (2) erred in relying on medical expert Dr. Block's hearing testimony regarding whether M.K.J.'s conditions met or equaled a Listing; (3) ignored or mischaracterized medical evidence; and (4) erred in assessing Ms. Jordan's credibility. [*Id*. at 9-24] The Court will consider each claim in turn.

### 1. The ALJ's Finding that M.K.J.'s Impairments Did Not Meet or Medically Equal a Listing

Ms Jordan first argues that the ALJ erred in concluding that M.K.J.'s impairments did not meet or medically equal a Listing. [Dkt. 21 at 9.] Specifically, she claims that the ALJ erred in his decision that "M.K.J.'s combined impairments of asthma and developmental delays did not meet or medically equal Listing 103.03C2 (asthma treated with steroids) or Listing 112.10 (pervasive developmental disorders)." [*Id*.]

Ms. Jordan begins her argument with the conclusory assertion that "[i]t was obviously unfair for the ALJ to ignore or reject all of the evidence proving disability and to base the decision solely on the agency's evidence proving non-disability," and the remainder of her argument in favor of remand builds from that assumed conclusion. [*Id*. at 9-11.] The Court, however, does not accept such an assumption, and it will construe Ms. Jordan's challenge as one seeking to establish that the ALJ did not consider all the pertinent evidence in finding that M.K.J was not disabled. To the extent that Ms. Jordan argues that the ALJ failed in that regard, the Court rejects Ms. Jordan's argument.

6

A review of the ALJ's explanation of his decision shows that the ALJ considered the record as a whole, and that his decision is supported by substantial evidence in the record. Within his decision, the ALJ explicitly refers to the various medical and nonmedical evidence he considered in making his finding.  [R. 13-24; dkt. 14-2 at 14-25.]  While the ALJ explicitly referenced the evidence indicating M.K.J.'s severe impairments, including her "history of cleft lip, status-post surgical repair, asthma, and history of developmental delays," [R. 13; dkt. 14-2 at 14], and other medical evidence of her impairments and limitations, [*see* R. 13-24; dkt. 14-2 at 14-25], including Dr. O'Brien's report that her borderline range of intellectual functioning, the ALJ also considered Dr. Pearce's report that M.K.J. had undergone successful cleft lip surgery and was now caught up to her peers developmentally, [R. 15; dkt. 14-2 at 16], as well as Dr. Block's expert medical opinion that M.K.J. did not meet a Listing for developmental delays or asthma, [R 14; dkt. 14-2 at 15]. Because the ALJ's decision was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Barnett*, 381 F.3d at 668, the Court finds that there is substantial evidence to support the ALJ's finding and preclude remand.  42 U.S.C. § 405(g).

To the extent that Ms. Jordan argues that the ALJ erred because he failed to fully credit testimony from Ms. Jordan that might support a finding of disability,  the Court finds her argument without merit.  Because the ALJ discussed both Ms. Jordan's testimony and the weight he afforded her testimony,[1]  [R. 14, 16, 17, 22, 24; dkt. 14-2 at 15, 17, 18, 23, 25], he has provided this Court with an adequate basis for review of his reasoning.  *See Dixon*, 270 F.3d at 1176 ("[An ALJ] is not required to address every piece of evidence or testimony, but must provide some glimpse into her reasoning." (citation omitted)).

---

[1] The Court will address in a later section the propriety of the ALJ's credibility determination with respect to Ms. Jordan's testimony.

The Seventh Circuit has held that an ALJ's decision is not subject to remand merely because he did not address each piece of evidence individually. *Id.* The Court's review is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's findings, *Barnett*, 381 F.3d at 668, which it does here. *See Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) ("The ALJ need only build a bridge from the evidence to his conclusion." (citations and internal quotation omitted)); *Glenn v. Secretary of Health & Human Services*, 814 F.2d 387, 391 (7th Cir. 1987) ("[C]ourts will rarely be able to say that the administrative law judge's finding was not supported by substantial evidence.").

There is substantial evidence in the record to support the ALJ's finding and preclude remand, 42 U.S.C. § 405(g), and to the extent that Ms. Jordan attempts to highlight evidence that would support an alternate decision, her argument is unavailing. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992) ("The court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence."). *See also Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. (2004) ([T]he ALJ's decision, if supported by substantial evidence, will be upheld even if an alternative position is also supported by substantial evidence." (internal citation omitted)). Therefore, the Court finds meritless Ms. Jordan's challenge on this ground.

### 2. The ALJ's Reliance on Dr. Block's Hearing Testimony

Ms. Jordan also argues that the ALJ improperly relied on Dr. Block's testimony in concluding that M.K.J. did not meet or equal a Listing. [Dkt. 21 at 12.] Specifically, Ms. Jordan contends that because two portions of Dr. Block's testimony were allegedly "contrary to the evidence," [*id*], his testimony does not constitute substantial evidence on which the ALJ could have properly based his decision, [*id*].

Ms. Jordan first alleges that Dr. Block's testimony regarding M.K.J's developmental delays and their ability to satisfy Listing 112.12 was "contrary to the evidence." [*Id.*] She cites her own testimony and Dr. Croffie's medical examination in arguing that "the evidence showed functions that the claimant could not perform although it was appropriate for her to do so at her age." [*Id.*] Although Ms. Jordan describes Dr. Croffie's report as corroborative of her own testimony, she mistakenly equates documentation of Ms. Jordan's allegations with adoption on the part of Dr. Croffie of those beliefs. [See R. 319-21; dkt. 14-7 at 37-39.] As the Court will discuss in a later section, the ALJ did not find Ms. Jordan's testimony fully credible, and her challenge to Dr. Block's testimony on the grounds that her own testimony supports alternate findings is without merit. As stated above, a claimant's attempt to highlight evidence that would support an alternate conclusion will not merit remand. *See Arkansas*, 503 U.S. at 113; *Scheck*, 357 F.3d at 699.

Ms. Jordan also revisits an argument initially raised at the hearings before ALJ Norris that Dr. Block's testimony regarding M.K.J.'s asthma and its inability to satisfy Listing 103.03 "Asthma" was "contrary to the evidence" because Dr. Block "erroneously thought that Listing 103.03C2 required evidence of symptoms more than 2 times a week because that was what the definition of 'chronic persistent' was," [*id* at 14.]

As at the hearing, Ms. Jordan has still not provided any authority for her challenge to Dr. Block's analysis of Listing requirements. As the Commissioner points out, Dr. Block is "an agency consultant with expertise in disability evaluation," [dkt. 24 at 12], whose qualifications Ms. Jordan has never challenged, [*id*]. As an accepted medical expert, Dr. Block may be properly relied upon for his expert medical opinion, and the ALJ cannot be said to have erred in so doing. The ALJ therefore did not commit reversible error by including Dr. Block's among the

substantial evidence on which he based his decision, and the Court finds meritless Ms. Jordan's challenges on these grounds.

### 3. The ALJ's Alleged Ignoring or Mischaracterization of Medical Evidence

Ms. Jordan also argues that the ALJ erred by ignoring or mischaracterizing certain medical evidence. In support of this contention, she cites her own testimony, [dkt. 21 at 16], and highlights portions of the record to which the ALJ cited that tend to support an alternate finding, [*id* at 16-20].

Again, the Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's (and ultimately the Commissioner's) findings. *Barnett*, 381 F.3d at 668 (citation omitted). As the Court has discussed above, there is substantial evidence in the record to support the ALJ's finding and preclude remand, 42 U.S.C. § 405(g), and to the extent that Ms. Jordan attempts to highlight evidence that would support an alternate decision, her argument is unavailing. *See Arkansas*, 503 U.S. at 113 ("The court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence."). *See also Scheck*, 357 F.3d at 699 ([T]he ALJ's decision, if supported by substantial evidence, will be upheld even if an alternative position is also supported by substantial evidence." (internal citation omitted)).

Furthermore, to the extent that Ms. Jordan alleges that the ALJ "ignored" certain evidence because he did not mention every detail in his opinion, the Court also finds that argument without merit. *See Sims*, 309 F.3d at 429 ("The ALJ need only build a bridge from the evidence to his conclusion." (citations and internal quotation omitted)). The Court therefore finds that Ms. Jordan's challenge on this ground does not merit remand.

### 4. The ALJ's Adverse Credibility Finding

Ms. Jordan also claims that the ALJ erred in assessing her credibility because his discussion of the factors supporting his finding was contrary to Social Security Ruling 96-7p. [Dkt. 21 at 21-23.] Under SSR 96-7p, an ALJ is to consider the claimant's daily activities; the location, duration, frequency and intensity of pain or other symptoms; precipitating and factors; the type, dosage, effectiveness and side effects of any medication; treatment and other measures the individual undergoes; and any other factors concerning functional limitations and restrictions when ascribing weight to subjective testimony of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3).

As stated earlier, this Court's review of credibility findings is a limited one. Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, the Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska*, 454 F.3d at 738 (quotations omitted).

Within his decision, the ALJ made the following credibility finding:

> However, it is recognized that the child's mother has made allegations which, if taken at face value, would likely produce a different outcome. However, these subjective allegations have been evaluated in accordance with the principles set forth in 20 CFR 416.929(c) and Social Security Ruling 96-7p and given weight only to the extent that the subjective allegations are reasonably consistent with the overall evidence of record, and beyond this the allegations are not credible and are given little to no weight in assessing the claimant's residual functional capacity.

[R. 24-25; dkt. 14-2 at 25-26.]

Ms. Jordan criticizes the ALJ's credibility finding above as "perfunctory," "vague[]," and "contrary to SSR 96-7p." [Dkt. 21 at 21-23.] In reply to the Commissioner's argument that she "fails to specify any evidence that undermined the ALJ's adverse credibility finding or identify any particular factor that he did not consider," [dkt. 24 at 10], Ms. Jordan cites evaluation findings of Dr. O'Brien that she claims corroborate her testimony, [dkt. 27 at 15].

As the Commissioner points out, the ALJ made reference to SSR 96-7p factors as he considered whether M.K.J.'s impairments met, equaled, or functionally equaled any listings. Specifically, the ALJ noted the infrequency of symptoms, the lack of treatment and other measures, and the lack of objective evidence to support Ms. Jordan's allegations of disability. [R. 13-24; dkt. 14-2 at 15-25.] The ALJ's specific notation of these factors, coupled with his statement that Ms. Jordan's testimony would be given only "only to the extent that the subjective allegations are reasonably consisting with the overall evidence of record," [R. 24; dkt. 14-2 at 25], is enough to comply with SSR 96-7p. *See* 29 C.F.R. 416.929(c)(4) (subjective testimony by or on behalf of a claimant will be considered "to the extent that [the claimant's] alleged functional limitations and restrictions ... can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

Ms. Jordan's arguments are unavailing in light of this Court's limited standard of review. As discussed above, substantial evidence supports the ALJ's adverse credibility finding, and the Court cannot find the ALJ's assessment to be "patently wrong," as is required for a reversal, *Prochaska*, 454 F.3d at 738. *See also Kittelson v. Astrue*, No. 09-2281, 2010 WL 271726, *4 ("The ALJ's adverse credibility finding was not perfect. But it was also not 'patently wrong.'") (internal citation omitted). Ms. Jordan's challenge on that ground is therefore without merit.

## CONCLUSION

Although M.K.J., by way of her mother Tiffany Jordan, has raised several challenges to the ALJ's decision, the Court finds that those challenges have no merit given the limited standard of review that the Court must apply here. Therefore, the Court **AFFIRMS** the Commissioner's denial of benefits. Final judgment will be entered accordingly.

05/24/2012

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF**:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com